# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER JAMES IVORY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case no. 4:14 CV 2093 RWS** |
| | ) | |
| **JAY CASSADY and JOSH HAWLEY,[1]** | ) | |
| | ) | |
| **Respondents.** | ) | |

## MEMORANDUM AND ORDER

Petitioner Christopher James Ivory seeks federal habeas relief from a Missouri state court judgment entered after a jury trial.[2] See 28 U.S.C. § 2254. With respect to ground 4, Petitioner requests an evidentiary hearing and a "Federal Public Defender."[3]    Additionally, Petitioner

---

[1]  The Court substitutes Josh Hawley, the present Attorney General of the State of Missouri, for Chris Koster, who was the Missouri Attorney General at the time the Court added the Missouri Attorney General as a Respondent in this case. Fed. R. Civ. P. 25(d).

[2]  Petitioner attached to his petition approximately 200 pages of exhibits consisting in large part of partial or complete copies of materials in the record of the underlying state court proceedings. See ECF Nos. 1-1 and 1-2, except at 64, 66, 68, 99-100, and 103-06. Except as noted below, in resolving the issues in this proceeding the Court considered and refers to the complete copies of materials from the state court record filed by Respondents, rather than the portions of the state court record Petitioner provided with his habeas petition.

The state court records filed by Respondents do not, however, include a copy of the sentencing hearing transcript. See attachments to Resp'ts' mot. dismiss [ECF No. 16]; paper copies of Resp'ts' Exs. B and C [ECF No. 17]; attachments to Resp'ts' response to court order [ECF No. 27]; and paper copies of Resp'ts' Exs. A through L [ECF No. 51]. Petitioner provided a copy of the sentencing hearing transcript as an attachment to his habeas petition [ECF No. 1-2 at 70-80]. Respondents have not objected in any respect to the copy of the sentencing transcript provided by Petitioner. See, e.g., Rule 7(c) of the Rules Governing Section 2254 Cases in the United States District Courts. Under the circumstances, the Court considered and refers to the sentencing hearing transcript provided by Petitioner as part of the record of the underlying state court proceedings.

Petitioner also attached to his petition certain other materials not in the state court record provided by Respondents: three pages of Petitioner's Department of Corrections Adult Institution Face Sheet [ECF No. 1-2 at 64, 66, and 68]; two pages from 21A Am. Jur. 2d Criminal Law § 1161 regarding the permissible role of standby counsel [ECF No. 1-2 at 99-100]; and a motion to dismiss for violation of statutory and constitutional rights to speedy trial filed by Petitioner [ECF No. 1-2 at 103-06]. These materials were not needed to resolve issues in this habeas case.

[3]  Pet'r pet'n [ECF No. 1 at 19].

moves for a Certificate of Appealability ("COA") with respect to each of four grounds for relief [ECF Nos. 45, 46, 47, 48, and 49]. See 28 U.S.C. § 2253(c)(1). Finally, if the Court grants habeas relief because there is insufficient evidence of the attempted forcible rape (ground 2), Petitioner asks the Court to credit his sentence for the kidnapping offense (Count 2) with the time he has served on the attempted forcible rape offense (Count 1) [ECF No. 50]. Respondents filed a response to the petition, along with exhibits consisting of copies of materials from the underlying state court proceedings (except for the sentencing hearing transcript which Petitioner provided with the filing of his petition).[4] Respondents did not respond to: Petitioner's requests for an evidentiary hearing and a "Federal Public Defender" with respect to ground 4, grounds 32 and 33, Petitioner's motions for COAs, and Petitioner's request for credit on his kidnapping sentence.

After careful consideration, the Court denies the petition because, of the thirty-one grounds for relief before the Court, twenty-six grounds are procedurally barred and may not be considered on their merits, one ground (ground 8) is not cognizable or moot, and the other four grounds (grounds 2, 26, 32, and 33) lack merit. The Court also denies Petitioner's request for an evidentiary hearing and a "Federal Public Defender" with respect to ground 4. Finally, the Court will not issue any COA and, because habeas relief is not granted with respect to ground 2, Petitioner's request for credit on his kidnapping sentence is denied.

---

[4] See note 2 supra. Respondents filed their exhibits both electronically and as paper exhibits. See ECF Nos. 16 and 27 for the electronically filed exhibits and ECF Nos. 17 and 51 for the paper exhibits. Regardless of the manner in which Respondents filed their exhibits, the exhibits have the same letter designations.

# I. Background

<u>Trial court proceedings</u>

The State of Missouri charged Petitioner, as a prior offender,[5] with committing attempted forcible rape in violation of Missouri Revised Statutes Section 566.030 (Count 1), kidnapping in violation of Missouri Revised Statutes Section 565.110 (Count 2), and second-degree robbery in violation of Missouri Revised Statutes Section 569.030 (Count 3).[6] With respect to the attempted forcible rape charge in Count 1, the State specifically alleged Petitioner "demanded [Victim] pull down her pants and then tried to unfasten [Victim's pants] when she refused and straddled her . . . for the purpose of committing . . . forcible rape."[7] For the kidnapping charge in Count 2, the State charged Petitioner with "unlawfully confin[ing Victim] without her consent for a substantial period, for the purpose of terrorizing [Victim]."[8] With regard to the second-degree robbery charge in Count 3, the State charged Petitioner with "forcibly st[ealing] a purse in the possession of" Victim.[9]

---

[5] The allegation that Petitioner was a prior offender is in the substitute information in lieu of indictment that was the subject of trial, but was not in the first two charging instruments, i.e., the original complaint with probable cause statement and the indictment. <u>See</u> Legal File, Resp'ts' Ex. B at 17-19 (complaint), 20-21 (indictment), and 33-34 (substitute information in lieu of indictment).

[6] Substitute Information in lieu of Indictment, filed Dec. 7, 2009, Legal File, Resp'ts' Ex. B at 33-34. Before the start of trial, the trial court amended the substitute information in lieu of indictment by granting Petitioner's unopposed requests to amend the information to correct certain addresses listed on it. <u>See</u> Trial Tr., Resp'ts' Ex. A, at 21-23.

[7] Substitute Information in lieu of Indictment, filed Dec. 7, 2009, Legal File, Resp'ts' Ex. B at 33.

[8] Substitute Information in lieu of Indictment, filed Dec. 7, 2009, Legal File, Resp'ts' Ex. B at 33.

[9] Substitute Information in lieu of Indictment, filed Dec. 7, 2009, Legal File, Resp'ts' Ex. B at 34.

In August 2010, after obtaining an evaluation of Petitioner's competency to stand trial and finding Petitioner fit to proceed,[10] the trial court held a hearing,[11] obtained a waiver of counsel signed by Petitioner, and granted Petitioner's motion to represent himself, appointing stand-by counsel for Petitioner "over objection."[12]  In appointing an assistant public defender as stand-by counsel for Petitioner, the trial court stated stand-by counsel was appointed "to consult with [Petitioner] during trial only but not to actively participate in the trial."[13]

Before voir dire began for the November 2010 trial, the parties stipulated that Petitioner had a prior felony conviction, and the trial court concluded "therefore the jury does not have punishment" to decide.[14]  In response to Petitioner's motion in limine and the trial court's inquiry, the prosecutor advised Petitioner and the trial court that she did not plan to bring up any prior bad act issues, so, unless "the door's opened," the prosecutor was not going to introduce or mention prior arrests, prior charges, or prior trials.[15]  The trial court asked the prosecutor to "approach the bench first before" she brought such information up if she thought she needed to introduce it, and she agreed to do so.[16]

---

[10]  Order, dated Feb. 24, 2010, Legal File, Resp'ts' Ex. B, at 62; Order, dated July 19, 2010, Legal File, Resp'ts' Ex. B, at 74.

[11]  Hr'g Tr., Resp'ts' Ex. A, at 3-53.

[12]  Order, filed Aug. 18, 2010, Legal File, Resp'ts' Ex. B, at 9 and 77; Docket entry dated Aug. 26, 2010, and Waiver of Counsel and order, dated Aug. 27, 2010, Legal File, Resp'ts' Ex. B, at 9 and 91, respectively.

[13]  Docket entry dated Aug. 26, 2010 and Waiver of Counsel, dated Aug. 27, 2010, Legal file, Resp'ts' Ex. B, at 9 and 91, respectively; see also Hr'g Tr., Resp'ts' Ex. A, at 47-48.

[14]  Trial Tr., Resp'ts' Ex. A at 28-31.

[15]  Trial Tr., Resp'ts' Ex. A at 23-24.

[16]  Trial Tr., Resp'ts' Ex. A at 24.

The trial court also considered the parties' pretrial motions, including Petitioner's renewed motion to dismiss for speedy trial violations, which the State opposed and the trial court denied.[17] Additionally, the trial court questioned Petitioner about his pro se status.[18] In allowing Petitioner to proceed with trial pro se, the trial court concluded that Petitioner fully understood what he was doing by proceeding pro se, had "plenty of time to think about it," had received a full hearing in August 2010, had signed a waiver, and had received a "full explanation" about how the trial court would proceed.[19]

During trial, the State presented the testimony of (1) Victim (identified in this case as D.C., who was fifteen years old at the time of the incident)[20] (2) two witnesses who heard Victim's screams that someone call the police and who placed the call to 911 ( Shamona Burch and Shamira Burch),[21] (3) two officers with the St. Louis Metropolitan Police Department ("SLMPD") who investigated after the SLMPD received the 911 call (Officer Ryan Barone, who spoke with Victim and investigated at the scene, and Officer Reginald Jones, who looked for Petitioner after Officer Barone sent out Petitioner's name and picture),[22] and (4), in rebuttal, Erin Duke, a biologist[23] with the SLMPD crime lab who tested a blue polo shirt found near the scene

---

[17] Trial Tr., Resp'ts' Ex. A, at 3-10.

[18] Trial Tr., Resp'ts' Ex. A, at 10-15.

[19] Trial Tr., Resp'ts' Ex. A, at 14-15.

[20] Trial Tr., Resp'ts' Ex. A, at 281-354; Id. at 282 (Victim's testimony that she was 16 years old at the time of trial and 15 years old at the time of the incident).

[21] Trial Tr., Resp'ts' Ex. A, at 356-71 and 371-87.

[22] Trial Tr., Resp'ts' Ex. A, at 394-430 and at 431-38.

[23] Duke testified that, in her role as a biologist in the SLMPD crime lab, she "screen[s] evidence for biological fluids [and] DNA, write[s] reports[,] testif[ies] in court" and occasionally "review[s] other screeners' or analysts' work." Trial Tr., Resp'ts' Ex. A, at 546.

of the crime.[24]  Petitioner testified on his own behalf.[25]  In addition to presenting testimony, both parties introduced exhibits into evidence, including the blue polo shirt[26] and a recording of the 911 call, which was played for the jury after the parties stipulated it was the recording of the 911 call "made in connection with this case."[27]

The trial court instructed the jury with respect to the charged offenses, as well as stealing from a person, a lesser-included offense for second-degree robbery, which was suggested by Petitioner and not opposed by the State.[28]  The jury found Petitioner guilty of attempted forcible rape, second-degree robbery, and stealing from a person.[29]  The trial court denied Petitioner's post-trial motions, including Petitioner's motion for a new trial and motion for acquittal,[30] and sentenced Petitioner to consecutive terms of imprisonment of thirty years for attempted forcible rape, fifteen years for second-degree robbery, and seven years for stealing from a person.[31]

---

[24]  Trial Tr., Resp'ts' Ex. A, at 546-56. Duke testified that, for testing purposes, an SLMPD crime lab biologist had cut in two places the fabric of the blue polo shirt Officer Barone found in the street near the scene of the incident. Duke also testified she did not perform the testing or write the report relating to the blue polo shirt in this case. Prior to testifying, however, she reviewed the report of the crime lab biologist who had performed the testing, as well as the shirt and the cuttings from the shirt. Id. at 546-48, 553.

[25]  Trial Tr., Resp'ts' Ex. A, at 444-511.

[26]  Trial Tr., Resp'ts' Ex. A, at 512-13.

[27]  Trial Tr., Resp'ts' Ex. A, at 390-94.

[28]  Trial Tr., Resp'ts' Ex. A, at 520-37 (instruction conference); Legal File, Resp'ts' Ex. B, at 101-05 (verdict-directing instructions, Nos. 5-8).

[29]  Verdicts, Legal File, Resp'ts' Ex. B, at 110-12; Trial Tr., Resp'ts' Ex. A, at 590. The trial court's judgment refers to Mo. Rev. Stat. § 570.030 for the stealing from a person offense. See Trial Ct. J. at 1, Legal File, Resp'ts' Ex. B, at 135.

[30]  See Sentencing Hr'g Tr. at 8 and 27 [ECF No. 1-2 at 78 and 73].

[31]  Judgment, filed Jan. 14, 2011, Legal File, Resp'ts' Ex. B, at 135-38; Sentencing Hr'g Tr. at 28 [ECF No. 1-2 at 73].

## Direct appeal

Petitioner was represented by an attorney in the direct appeal. Petitioner presented four points on appeal.[32] First, Petitioner argued the trial court plainly erred by accepting Petitioner's waiver of counsel and permitting him to proceed pro se without first ascertaining whether Petitioner was competent to represent himself after Petitioner demonstrated fundamental misunderstanding about the conduct of a trial.[33] Petitioner argued that this error violated his rights to due process and the effective assistance of counsel as guaranteed by the Fifth, Sixth, and Fourteenth Amendments. Second, Petitioner contended there was insufficient evidence to support the attempted forcible rape conviction. He argued that the State did not establish the elements of the crime beyond a reasonable doubt, specifically whether he made a substantial step toward raping Victim or had the purpose to rape Victim.[34] He argued that this lack of evidence violated his due process right to a fair trial as guaranteed by the Fifth and Fourteenth Amendments. Third, Petitioner argued that the trial court violated his rights to equal protection, due process, and a fair trial as guaranteed by the Fifth, Sixth and Fourteenth Amendments by refusing to give the jury his lesser included offense instruction for false imprisonment. According to Petitioner, the kidnapping offense in Count 2 included all the legal and factual elements of false imprisonment; alternatively, the jury may have disbelieved that he had a purpose of terrorizing Victim.[35] Fourth and Finally, Petitioner asserted the trial court should not have allowed the prosecutor to comment on, question Petitioner about, or present arguments

---

[32] Pet'r's Br., Resp'ts' Ex. C, at 18-21.

[33] Pet'r's Br., Resp'ts' Ex. C, at 18.

[34] Pet'r's Br., Resp'ts' Ex. C, at 19.

[35] Pet'r's Br., Resp'ts' Ex. C, at 20.

about Petitioner's invocation of his right to represent himself, which incriminated and attacked Petitioner's character.[36] Petitioner argued that by allowing these actions, the trial court plainly erred and violated his rights to due process and to act as his own attorney as guaranteed by the Fifth, Sixth, and Fourteenth Amendments.

The Missouri Court of Appeals for the Eastern District affirmed the trial court's judgment in an unpublished per curiam order accompanied by a memorandum sent to the parties only setting forth the reasons for the order affirming the judgment. See State v. Ivory, No. ED96414 (Mo. Ct. App. Sept. 18, 2012). In its decision, the Missouri Court of Appeals addressed the merits of points two and three, and reviewed Petitioner's first and fourth points together for plain error and on their merits. Id. The Court of Appeals issued its mandate on November 15, 2012, after the Missouri Supreme Court denied Petitioner's application for transfer.[37]

Post-conviction proceedings

Petitioner filed a pro se motion for post-conviction relief ("PCR") in 22nd Judicial Circuit Court for St. Louis City setting forth more than fifty claims for relief and a request for an evidentiary hearing.[38] Through appointed counsel, Petitioner filed an amended PCR motion, asserting two claims additional to all claims presented by Petitioner in his pro se PCR motion, as well as a request for an evidentiary hearing.[39] Without conducting a hearing, the motion court

---

[36] Pet'r's Br., Resp'ts' Ex. C, at 21.

[37] See October 23, 2012 and November 15, 2012 entries on docket sheet for State v. Ivory, No. ED96414 (Mo. Ct. App. filed Mar. 21, 2011).

[38] Pet'r's PCR motion, filed Dec. 6, 2012, PCR Legal File, Resp'ts' Ex. F, at 3-44; Pet'r's letter request for an evidentiary hearing, id. at 45.

[39] Pet'r's Am. PCR motion, filed Mar. 5, 2013, PCR Legal File, Resp'ts' Ex. F, at 51-116.

denied Petitioner's amended motion, specifically addressing each claim in the amended motion, including each claim presented in Petitioner's pro se PCR motion.[40]

## Post-conviction appeal

Through counsel, Petitioner pursued two points in his post-conviction appeal.[41] First, petitioner challenged the motion court's denial of his ineffective assistance of counsel claim. Petitioner alleged his direct appeal attorney failed to raise a claim that the trial court erred when it overruled his objections to the State's questioning of him on the witness stand. According to Petitioner, the State forced "him to speculate about why all of the witnesses put this case on him," and the prosecutor "call[ed] him a monster." In summary, he argued that (1) this line of questioning was speculative and argumentative; (2) the trial court erred in overruling his objections to these questions; (3) his direct appeal attorney failed to raise a claim that the trial court erred; and (4) this failure violated his rights to the effective assistance of counsel, to due process, and to access to the courts under the Fifth, Sixth, and Fourteenth Amendments.[42]

Second, Petitioner challenged the motion court's denial of his prosecutorial misconduct claim. Specifically, Petitioner contended that the prosecutor "improperly asked [him] to comment on credibility of witnesses," and that such questions were "argumentative [and] forced him to speculate about the witnesses, invaded the province of the jury, and served no probative value."[43] He argues that the questions therefore violated his rights to due process, the effective assistance of counsel and a fair trial under the Fifth, Sixth, and Fourteenth Amendments.

---

[40] Conclusions of Law and Order, filed Mar. 25, 2013, PCR Legal File, Resp'ts' Ex. F, at 120-34.

[41] Pet'r Br., Resp'ts' Ex. G, at 11 and 12.

[42] Pet'r Br., Resp'ts' Ex. G, at 11.

[43] Pet'r Br., Resp'ts' Ex. G, at 12.

The Missouri Court of Appeals for the Eastern District affirmed the motion court's judgment. Ivory v. State, No. ED99916, (Mo. Ct. App. Feb. 11, 2014). In its opinion, the court addressed both points on their merits and concluded Petitioner should have pursued his prosecutorial misconduct claim on direct appeal. The Court of Appeals issued its mandate on March 6, 2014. Id. at 9-10.

Petitioner then filed his pending habeas petition.

## II. Grounds for Relief

Petitioner sets forth thirty-three grounds for relief in his habeas petition. The Court dismissed two unexhausted grounds (grounds ten and thirty),[44] leaving thirty-one grounds before the Court. In his thirty-one grounds for relief, Petitioner asserts:

1.) The substitute information in lieu of indictment charging Petitioner with attempted forcible rape (Count 1) was fatally defective in that it did not (a) include forcible compulsion or a substantial step toward forcible rape, (b) mention the attempt statute, the character of the force used, and what acts by which the Petitioner did not have the consent of Victim, or (c) state that Petitioner acted knowingly. The trial court therefore allegedly lacked jurisdiction and violated his Fourth, Fifth, Sixth, and Fourteenth Amendment rights.

2.) There was insufficient evidence to support the attempted forcible rape conviction because (a) Victim "never stated [Petitioner] straddled her" and (b) Victim testified during cross-examination that (i) Petitioner did not "undo her pants button, her pants never went below her waistline [and] her underwear was never exposed," (ii) "none of her clothes were torn, ripped, or came off," (iii) Petitioner "never touched her . . . vaginal[], breast, or anal area" (iv) Petitioner's "penis was never exposed, [and Petitioner] never pulled his pants down" and (v) Victim did not tell Petitioner her age. The trial court therefore allegedly violated his due process rights.

3.) The attempted forcible rape verdict director (Instruction No. 5) was fatally defective because it did not state that (a) Petitioner acted knowingly, (b) Petitioner acted without Victim's consent or when Victim refused, (c) Petitioner made a substantial step, (d) a correct definition of forcible rape, or (e) that there was forcible

[44] See Order, filed Feb. 26, 2016 [ECF No. 33].

compulsion. The trial court therefore allegedly violated his Fifth and Sixth Amendment rights.

4.) The State knowingly used perjured testimony, in violation of Petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments, "by calling a fake witness to testify" as Victim.[45]

5.) The trial court violated his Fifth and Sixth Amendment rights, as well as his right to due process, by (a) denying his motions to dismiss for speedy trial violations, (b) failing to make his renewed motion to dismiss for speedy trial part of the legal file, and (c) failing to bring him to court for, or giving him the opportunity to respond to, requests for continuance.

6.) The kidnapping charge in the substitute information was fatally defective in that it did not mention that Petitioner either used forcible compulsion or acted knowingly. The trial court therefore allegedly lacked jurisdiction, and violated his rights under the Fourth, Fifth, and Sixth Amendments.

7.) The evidence was insufficient to support the kidnapping conviction, in violation of his due process rights, because (a) the kidnapping occurred at the same time and place as the attempted forcible rape and kidnapping cannot be merely incidental to another offense, and (b) there was no evidence that Petitioner confined Victim for a substantial period for the purpose of terrorizing her.

8.) There was no probable cause to support the kidnapping charge because the probable cause statement[46] (a) indicated that Petitioner removed Victim from one place to another, (b) did not mention either confinement without consent "nor terrorizing," and (c) did not mention how Petitioner "allegedly terrorized" Victim. The trial court therefore allegedly lacked jurisdiction and violated his Fourth, Fifth, Sixth, and Fourteenth Amendments rights.

9.) The trial court's sentences are "disproportional to the offenses" and the trial court did not state on the record its reasons for either imposing the sentence or deviating

---

[45] With respect to ground 4, Petitioner seeks "[a]n evidentiary hearing, new trial, or order of release," as well as a "Federal Public Defender." Pet'r's Pet'n [ECF No. 1 at 19]. Petitioner also states he filed an action under 42 U.S.C. § 1983 related to his fourth ground for relief: Ivory v. St. Louis City Circuit Attorney Office, 4:11 CV 1756 NAB (E.D. Mo. filed Oct. 5, 2011). A review of the available record in that case, reveals that the Court reviewed the claims prior to service of process and dismissed them under 28 U.S.C. Sections 1915(e)(2)(B) and 1367(c)(3), respectively. Id., Opinion, Mem. and Order at 3 and 5, filed Oct. 26, 2011 [ECF No. 4]; Order of Dismissal, filed Oct. 26, 2011 [ECF No. 5]. More specifically, the Court concluded the federal law claims were legally frivolous and declined to exercise supplemental jurisdiction over the state law claims. Id.

[46] Probable Cause Statem. Legal File, Resp'ts' Ex. B, at 19. For the kidnapping offense, the probable cause statement states Petitioner "removed [Victim] from [one] block . . . and took her by the throat to the rear of" a specific building on the same street. Id.

from the presentence recommendation,[47] in violation of Petitioner's rights to due process and to be free from cruel and unusual punishment.

10.) This ground for relief is dismissed.

11.) The trial court violated Petitioner's right to due process in violation of the Fifth, Sixth, and Fourteenth Amendments by sentencing Petitioner under Mo. Rev. Stat. Section 556.061. That statutory provision was allegedly not in the "charging instruments" and the trial court did not explicitly limit its application to the kidnapping conviction.[48]

12.) The trial court violated the constitutional prohibition against double jeopardy, as protected by the Fifth and Fourteenth Amendments, by convicting Petitioner of and sentencing him for both the attempted forcible rape and the kidnapping offenses. The State wrongly relied on the alleged forcible compulsion and lack of consent to support conviction, although neither element were in the attempted forcible rape charge. The evidence allegedly showed the kidnapping, which "was based solely on confinement and terrorizing," was incidental to the attempted forcible rape.

13.) The trial court violated the constitutional prohibition against double jeopardy, as protected by the Fifth Amendment, by convicting him of and sentencing him for both kidnapping and stealing from a person. The evidence demonstrates the latter offense "involves some kind of brief restraint or confinement and terror which was incidental to another offense."

14.) The trial court violated Petitioner's right to due process by providing the jury with verdict forms submitted by the State only, and no verdict forms submitted by Petitioner, who states he "never submitted verdict forms."

15.) The trial court violated Petitioner's right to due process because the verdict was read by the court clerk "confusingly and [in a] misleading [manner]" and, although polled, the jurors "may have been confused as to what they agreed to."

16.) The trial court violated Petitioner's right to due process by denying Petitioner's post-trial motion and petition to confirm the verdict.

---

[47] Petitioner also asserts the "assessment reporter" did not include a recommendation for sentencing on the kidnapping and stealing from a person offenses, and used "the wrong Mo. code and class [of] felony for Count 1." Pet'r's Pet'n [ECF No. 1 at 25]. As part of this ninth ground for relief, Petitioner seeks resentencing. Id.

[48] In addition to responding to ground 11 based on procedural issues and its merits, Respondents reserved the right to revisit their response to this ground if Petitioner "develop[ed] th[e] claim into a claim concerning parole eligibility." Resp'ts' Resp. to show cause order at 8 [ECF No. 41]. Petitioner has not presented this ground for relief as a parole eligibility claim.

17.) The trial court's sentence violated Petitioner's right to due process because the trial court did not enter on the judgment a "charge code" for stealing from a person (Count 3).

18.) The trial court's sentence violated Petitioner's right to due process because, although the trial court found Petitioner was a prior offender (and therefore ineligible for jury sentencing) as charged, the trial court's judgment did not include a finding that Petitioner was a prior offender.

19.) Petitioner's rights to due process and the effective assistance of counsel were violated by the trial court's acceptance of a defective waiver of counsel because Petitioner "was misinformed by the [trial] court regarding the permissible role and active role of standby counsel."

20.) Petitioner was denied the effective assistance of counsel in violation of the Sixth Amendment by his standby attorney's failure "to give and offer advi[c]e to [Petitioner] before, during and after trial altogether until after judgment and sentence was pronounced."

21.) The prosecutor and trial court violated Petitioner's Fifth Amendment right to due process when the prosecutor (a) misstated the evidence at trial, (b) described crimes for "which [Petitioner] was not tried . . . in [a] court of law nor found guilty of," and (c) "unjustly stat[ed] [Petitioner] committed crimes."

22.) The substitute information did not state the offense of attempted forcible rape in violation because Count I did not (a) include forcible compulsion or a substantial step toward forcible rape, (b) mention (i) the attempt statute, (ii) the character of the force used, and (iii) what acts by Petitioner did not have the consent of Victim,  nor (c) state that Petitioner acted knowingly. The trial court therefore allegedly violated Petitioner's Fourth, Fifth, and Sixth Amendment rights.

23.) The substitute information did not state the offense of kidnapping in violation of Petitioner's Fourth, Fifth, Sixth and Fourteenth Amendments because Count 2 did not mention (a) that Petitioner used forcible compulsion or acted knowingly or (b) how Victim was terrorized.

24.) The court clerk, prosecutor, or trial court committed misconduct by removing from the verdict forms the information regarding who submitted the forms. These actions allegedly violated Petitioner's due process right and rights under the First, Fourth, Fifth, Sixth, and Ninth Amendments.

25.) The trial court allowed the prosecutor to comment on, question Petitioner, and present argument about Petitioner's invocation of his right to represent himself. The trial court therefore allegedly violated Petitioner's rights to due process, to represent himself and to a fair trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendments.

26.) The trial court violated Petitioner's right to a fair trial by overruling his objections to questions that called for speculation and bias in calling Petitioner a "monster."

27.) The motion court violated Petitioner's constitutional rights by denying Petitioner's post-conviction motion without a hearing because (a) Petitioner's counsel on direct appeal was ineffective for failing to raise a claim, (b) the trial court erred in overruling petitioner's objections "based [on] speculation and being argumentative," and (c) the prosecutor's questions "forc[ed Petitioner] to speculate about why all of the witnesses put this case on [him]." The trial court therefore allegedly violated Petitioner's rights to the effective assistance of counsel, due process, and access to the courts.

28.) The prosecutor violated Petitioner's right to due process and his rights under the Fifth and Sixth Amendments during closing argument by (a) vouching for the credibility of the State's witnesses and (b) asking "the jury to speculate on why everyone would be lying" about Petitioner.

29.) The trial court violated Petitioner's rights under the Fourth and Fifth Amendments by denying, without an evidentiary hearing, Petitioner's post-verdict motion to set aside or arrest judgment for the attempted forcible rape offense (Count 1) and kidnapping offense (Count 2).

30.) This ground for relief is dismissed.

31.) The prosecutor violated Petitioner's rights under the Fifth and Sixth Amendments when, during closing argument, the prosecutor (a) "misstat[ed] the evidence of the 911 [call] tape" and (b) "misle[d] the jury to believe that the 911 caller said 'someone is being raped.'"

32.) The trial court violated Petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments by sentencing Petitioner for attempted forcible rape as an unclassified felony when the offense "was only charged as a felony."

33.) The prosecutor violated Petitioner's rights under the Fifth and Fourteenth Amendments by not following an agreement "to preclude the State's admission of prior arrest[s], trials, and investigations of the witness[es], both during voir dire and at trial."

Respondents argue the Court may not consider the merits of grounds 1, 3-7, 9, 11-18, 21-24, 28, 29, and 31[49] because Petitioner (1) procedurally defaulted those claims by not presenting them to the Missouri Court of Appeals in Petitioner's direct appeal and (2) has not shown either cause and prejudice or a miscarriage of justice to avoid the default. For ground 2, Respondents contend the Missouri Court of Appeals' decision regarding the merits of the claim is not an incorrect or unreasonable application of clearly established federal law, is supported by the record, and is entitled to this Court's deference. Respondents argue that ground 8 is moot due to the jury's verdict finding Petitioner guilty beyond a reasonable doubt. They further argue ground 8 is not cognizable in this habeas proceeding to the extent Petitioner is challenging the trial court's jurisdiction. Respondents further assert that this Court may not consider the merits of grounds 19 and 25 because the Missouri Court of Appeals reviewed them on direct appeal for plain error, and Petitioner has not demonstrated either cause and prejudice or a miscarriage of justice to permit review of their merits. For ground 20, Respondents argue Petitioner defaulted that ground, and this Court may not consider the ground on its merits, because Petitioner did not present it to the Missouri Court of Appeals in his post-conviction appeal, and Petitioner has not shown either cause and prejudice or a miscarriage of justice to permit review of the claim on its merits. With respect to ground 26, Respondents assert the Missouri Court of Appeals' decision in Petitioner's post-conviction appeal regarding the merits of the claim is not an incorrect or unreasonable application of clearly established federal law, is supported by the record, and is entitled to this Court's deference. In response to ground 27, Respondents argue that the claim is

---

[49] Respondents also contend that grounds 1 and 22 are the same, grounds 6 and 23 are the same, ground 24 "is just a repackaging of ground" 14, and ground 29 is the same as ground 12 to the extent ground 29 challenges double jeopardy and the attempted forcible rape and kidnapping offenses and the same as ground 1 to the extent ground 29 raises issues of the sufficiency of the substitute information in lieu of indictment to charge attempted forcible rape. See Resp'ts' Response to show cause order at 15-16 and 21 [ECF No. 41].

defaulted, and may not be considered on its merits, for the reason that the Missouri Court of Appeals in Petitioner's post-conviction appeal held the claim "was not cognizable in a Rule 29.15 proceeding because the alleged misconduct would have been apparent at trial," and Petitioner has not established cause and prejudice or a miscarriage of justice to avoid the default. In the alternative, Respondents argue each of the defaulted grounds for relief lacks merit. Respondents did not explicitly respond to grounds 32 and 33.

### III. Discussion

Respondents argue the Court may not address the merits of any ground for relief, other than grounds 2, 8, and 26, because the claims are procedurally barred. Specifically, Respondents argue that the following grounds are procedurally defaulted: (1) grounds 1, 3-7, 9, 11-18, 21-24, 28, 29, and 31 because Petitioner did not pursue them on direct appeal; (2) grounds 19 and 25 because the Missouri Court of Appeals reviewed them on direct appeal for plain error; and (3) grounds 20 and 27 either because Petitioner did not present the claim in his post-conviction appeal (ground 20) or because Petitioner improperly presented the claim in his post-conviction appeal rather than in his direct appeal (ground 27). The procedural bar prohibiting review of the merits of these defaulted claims occurs because, Respondents assert, Petitioner has not shown either cause and prejudice or a miscarriage of justice to avoid the procedural default. Respondents contend the Court may address the merits of grounds 2 and 26 because Petitioner properly presented them to the Missouri Court of Appeals, which addressed them on their merits. Respondents argue this Court must defer to the Missouri Court of Appeals' decisions regarding the issues presented in grounds 2 and 26 because they correctly and reasonably applied clearly established federal law and are supported by the record. With respect to ground 8, Respondents argue it is either moot or not cognizable in this habeas proceeding. The Court also addresses the

merits of grounds 32 and 33, to which Respondents did not respond. Because a number of grounds may be procedurally barred from consideration on the merits, the Court addresses the procedural issues before discussing the merits.

    A.  Procedurally barred claims (all grounds except 2, 8, 26, 32 and 33)

       (1) *Procedural Default*

        (a) *Parties' Arguments*

In relevant part, Respondents contend that Petitioner procedurally defaulted all grounds for relief other than grounds 2, 8, 19, 25, and 26 either by failing to present those claims to the Missouri Court of Appeals or by failing properly to present the claim to the Missouri Court of Appeals (ground 27). With respect to grounds 19 and 25, Respondents argue they are procedurally defaulted because the Missouri Court of Appeals reviewed those two grounds for plain error.

Petitioner summarily responds that "Respondents['] procedural default argument is ambiguous and . . . does not clearly rest on independent and adequate state grounds," and, therefore, is not sufficient "to preclude federal collateral review."[50] Petitioner cites a decision of the United States Court of Appeals for the Ninth Circuit, Valerio v. Crawford, 306 F.3d 742 (9th Cir. 2002) (en banc), to support his position.[51]

---

[50] Pet'r's reply at 3 [ECF No. 44].

[51] Pet'r's reply at 3 [ECF No. 44]. Petitioner also contends Respondents "did not state or prove that the state procedural rule [that resulted in a default] is regularly followed and adhered to." Id. While that contention is accurate, that does not require the Court to decline to consider Respondents' procedural default arguments under the circumstances. Petitioner's alleged default occurred in large part when Petitioner did not present his claims to the state appellate court either after a jury trial in a criminal case resulting in a conviction or after the denial of his post-conviction motion. Petitioner has not cited any authority contrary to or limiting the principle that an appeal under such circumstances is a regularly followed and adhered to procedure in Missouri courts for the presentation and resolution of issues arising during the lower court proceedings. To the extent a procedural default allegedly occurred due to plain error review, Petitioner presented the relevant issues to the Missouri Court of Appeals as matters of plain error. See Points 1 and IV of Pet'r Br. for direct appeal, Resp'ts' Ex. C, at 18 and 21. Finally, with respect to

In Valerio, the Ninth Circuit concluded, in relevant part, that the habeas court improperly found procedural default with respect to issues addressed in a state supreme court decision the Ninth Circuit characterized as "ambiguous" and as "not clearly resting on independent and adequate state grounds." Id. at 773-75. Specifically, the Ninth Circuit noted the state supreme court, which considered as procedurally barred a group of eighteen claims, some of which had been presented to the state courts and some of which had not, without delineating which claims fell into each group, "fail[ed] to specify which claims were barred for which reasons." Id. at 775. Based on this conclusion, the Ninth Circuit reversed and remanded with instructions for the district court to give the claims, among others, "appropriate consideration." Id. at 779.

Assuming arguendo, the Valerio decision may apply to this case, it is distinguishable. All but three of Petitioner's alleged procedural defaults result from Petitioner's failure to present the Missouri Court of Appeals with the relevant issues, and do not result from the manner in which a state appellate court addressed issues presented to it. Therefore, Valerio clearly is inapplicable to the claims defaulted due to Petitioner's failure to present the issues on appeal in the state court proceedings.

For grounds 19 and 25, Petitioner presented them on direct appeal as issues of plain error and the Missouri Court of Appeals found no plain error.[52] Therefore, for grounds 19 and 25 the Missouri Court of Appeals clearly enunciated the basis for its review of those two claims, and Valerio is inapplicable.

_____

Petitioner's procedural default defense based on his presentation of a prosecutorial misconduct issue in his post-conviction appeal, the Court considers a regularly-followed exception to that requirement in the subsequent discussion of the claim (ground 27).

[52] State v. Ivory, No. ED96414, Mem. Supplementing Order Affirming J. pursuant to Rule 30.25(b), Resp'ts' Ex. E, at 6-9.

With respect to ground 27, which arises out of alleged prosecutorial misconduct occurring during trial, the alleged procedural default resulted from Petitioner's pursuit of the claim in his post-conviction appeal rather than his direct appeal. The Missouri Court of Appeals in Petitioner's post-conviction appeal unambiguously stated claims of prosecutorial misconduct are not cognizable in a post-conviction proceeding, and must be presented on direct appeal, unless the alleged misconduct "would not have been apparent at trial."[53] Unlike the state court decision considered by the Ninth Circuit in <u>Valerio</u>, the Missouri Court of Appeals clearly specified which issue was barred from consideration (prosecutorial misconduct) as well as why it was barred (Petitioner failed to present it on direct appeal although the alleged misconduct was apparent during trial). Therefore, <u>Valerio</u> does not save grounds 2, 8, 19, 25, 26, and 27 from procedural default.

Petitioner also argues that procedural default does not apply to his claims because he was unaware of, was not advised about, and "had not read case law about" procedural default principles. Petitioner does not cite any authority supporting this argument. He does not argue that a state actor or other circumstance misled him about the effect of procedural default issues or stopped him from addressing or learning about them. Without more, the Court need not further address this contention because, as discussed in the discussion below, the application of procedural default principles is not contingent on a petitioner's prior awareness or knowledge of procedural default issues. Moreover, Petitioner had an attorney available to him for consultation throughout trial and was otherwise represented by counsel during early pretrial proceedings, proceedings in the post-conviction motion court after he filed his <u>pro</u> <u>se</u> motion, and during his

---

[53] <u>Ivory v. State</u>, No. ED99916 at 6 (Feb. 11, 2014), Resp'ts' Ex. I (quoting <u>Wilson v. State</u>, 383 S.W.3d 51, 57 (Mo. Ct. App. 2012)).

appeals. Any lack of awareness or knowledge by Petitioner about procedural default issues and their consequences does not support a failure to consider their application in this federal habeas proceeding.

Petitioner further argues that Respondents' use of the word "demonstrates," as well as Respondents' use of the word "constitutes," (rather than the word "establishes") is "ambiguous" and "insufficient" to present the argument.[54] While Petitioner may disagree with Respondents' word choice, Respondents clearly state their position on procedural default issues with respect to each ground they challenge on the basis of procedural default.

Finally, Petitioner argues that grounds 1 and 22 (challenging the sufficiency of the attempted forcible rape charge) cannot be procedurally defaulted because "[a] claim that the indictment fails to state an offense may be raised at any time." (citing United States v. Villarreal, 707 F.3d 942 (8th Cir. 2013)). The Villarreal case, however, was not a federal habeas proceeding challenging the sufficiency of a state criminal charge.[55] Instead, Villarreal was a decision in a direct appeal challenging the sufficiency of the underlying federal indictment. Therefore, Villarreal is not helpful here. Assuming arguendo, that a federal habeas petitioner may pursue a challenge to the sufficiency of a state criminal charge, the Court is not persuaded that procedural default principles are inapplicable to such a ground for relief when the habeas petitioner failed to present a Missouri appellate court with the issue before pursuing it in the federal habeas proceeding. Therefore, the Court concludes it may consider the application of procedural default issues to Petitioner's grounds for relief.

---

[54] See Pet'r's reply at 2 and 10-11 [ECF No. 44].

[55] Petitioner's citation is otherwise accurate. See id. at 957 (quoting United States v. White, 241 F.3d 1015, 1020-21 (8th Cir. 2001)).

(b) *Procedural Default*

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991); 28 U.S.C. § 2241(c)(3) and § 2254(a). Before seeking federal habeas relief under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, a habeas petitioner "must first 'exhaust his state law remedies and fairly present the facts and substance of his habeas claim to the state court.'" Carney v. Fabian, 487 F.3d 1094, 1096 (8th Cir. 2007) (quoting Middleton v. Roper, 455 F.3d 838, 855 (8th Cir. 2006)); accord Nash v. Russell, 807 F.3d 892, 898 (8th Cir. 2015) (citing Baldwin v. Reese, 541 U.S. 27, 29 (2004)). "If a petitioner has not presented his habeas corpus claim to the state court, the claim is generally defaulted." Carney, 487 F.3d at 1096.

A petitioner must present the claim to the state courts "in accordance with state procedural rules." Arnold v. Dormire, 675 F.3d 1082, 1086-87 (8th Cir. 2012) (internal quotation marks omitted) (quoting Beaulieu v. Minnesota, 583 F.3d 570, 573 (8th Cir. 2009)); accord Sawyer v. Whitley, 505 U.S. 333, 338 (1992) (generally, a federal habeas court may not reach the merits of a federal constitutional claim procedurally defaulted due to a petitioner's failure "to follow applicable state rules in raising the claims" in state court). In Missouri state court proceedings, a litigant must raise constitutional claims at the earliest opportunity and preserve them throughout the proceedings. State v. Liberty, 370 S.W.3d 537, 546 (Mo. 2012) (en banc) (citing State v. Wickizer, 583 S.W.2d 519, 523 (Mo. 1979) (en banc)). To satisfy the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established

appellate review process." Grass v. Reitz, 643 F.3d 579, 584 (8th Cir. 2011) (internal quotation marks omitted) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)).[56]

A litigant in Missouri must pursue on direct appeal any allegations of trial court errors or prosecutorial misconduct apparent during trial court proceedings. See, e.g., Tisius v. State, 183 S.W.3d 207, 212 (Mo. 2006) (en banc) ("If the alleged [prosecutorial] misconduct was apparent at trial, then it is an issue for direct appeal, not a [post-conviction] proceeding"); Middleton v. State, 103 S.W.3d 726, 740 (Mo. 2003) (en banc) (alleged error in admission of a letter "constitutes a claim of trial error in admission of [a] document . . . [that] must be raised on direct appeal and [is] not cognizable in a post-conviction motion"); Griffin v. State, 794 S.W.2d 659, 661 (Mo. 1990) (en banc) (a challenge to certain statements by prosecutor during closing argument is an "issue[] that w[as] before the trial court in the course of [the] criminal trial" and subject to review on direct appeal).

This requirement applies to constitutional claims of trial error, which must be raised on direct appeal unless "exceptional circumstances are shown justifying the failure to raise the issues on direct appeal." Amrine v. State, 785 S.W.2d 531, 536 (Mo. 1990) (en banc); accord Franklin v. State, 24 S.W.3d 686, 693 (Mo. 2000) (en banc) ("Issues capable of being raised on direct appeal -- even constitutional issues -- may not be raised in post[-]conviction proceedings except where fundamental fairness requires otherwise and only in rare and exceptional circumstances"). "Exceptional circumstances" allowing consideration of a trial error during a post-conviction proceeding exist, for example, when before the direct appeal a petitioner lacks

---

[56] Because Petitioner must present each claim through a complete round of a state's established appellate process, and the procedural default issue is whether Petitioner presented the claim to a state appellate court, the Court need not address the extent to which Petitioner presented a claim in the lower state courts. Therefore, this discussion is limited to consideration of whether Petitioner presented each of his procedurally challenged grounds for relief to the Missouri Court of Appeals in the course of his underlying criminal and post-conviction proceedings.

knowledge, due to a state actor's conduct, of the information needed to make the claim. See, e.g., Frazier v. State, 431 S.W.3d 486, 492-93 (Mo. Ct. App. 2014) (allowing consideration during a post-conviction proceeding of an alleged Brady violation because the movant "was unaware of the State's nondisclosure at the time" of the movant's direct appeal).

However, an attorney's failure to raise a known or apparent error in trial proceedings on direct appeal cannot constitute an "exceptional circumstance." If that were the case, the "exceptional circumstances" rule would be meaningless: every trial error omitted from a direct appeal could be pursued in a post-conviction proceeding. On the contrary, a post-conviction proceeding "is not a substitute for direct appeal." State v. Twenter, 818 S.W.2d 628, 636 (Mo. 1991) (en banc). "Matters that properly should have been raised on direct appeal may not be litigated in a post-conviction proceeding." Id.

In contrast, a post-conviction proceeding is the exclusive procedure for pursuing an ineffective assistance of counsel claim in a Missouri state court. Mo. S. Ct. Rules 29.15(a), 29.15(k), and 29.15(l); Moore-El v. Luebbers, 446 F.3d 890, 896 (8th Cir. 2006). Granted, a court's decision on a post-conviction motion is subject to appeal, and a litigant may not file successive post-conviction motions. Id. Accordingly, to exhaust an ineffective assistance of counsel claim for a federal habeas proceeding, the claim must be raised in both a post-conviction motion and the post-conviction appeal. See, e.g., Osborne v. Purkett, 411 F.3d 911, 919 (8th Cir. 2005). Any claim that should have been but was not presented in an appeal from a denial of a post-conviction motion is procedurally defaulted. See, e.g., id. at 919 (an ineffective assistance of counsel claim that was in post-conviction motion but not in post-conviction appeal is "now procedurally barred"); Sweet v. Delo, 125 F.3d 1144, 1150 (8th Cir. 1997) (finding an

ineffective assistance of trial counsel claim defaulted "when [the petitioner] failed to raise it in his post-conviction appeal").

Finally, a ground for relief in a federal habeas proceeding is also procedurally defaulted if a state appellate court reviewed the issue for plain error. Clark v. Bertsch, 780 F.3d 873 (8th Cir. 2015). Importantly, where a state court "explicitly invokes a state procedural bar rule as a separate basis for decision" and alternatively reaches the merits of a federal claim, the adequate and independent state ground doctrine applies." Harris v. Reed, 489 U.S. 255, 264 n. 10 (1989).

In grounds 1, 3-7, 9, 11-18, 21-24, 28, 29, and 31, Petitioner pursues claims based on alleged trial court errors and alleged prosecutorial misconduct occurring during trial proceedings. Petitioner did not present the Missouri Court of Appeals during Petitioner's direct appeal with any of the claims Petitioner now pursues in these grounds for relief. Each of these grounds presents issues that were apparent during the proceedings in the trial court. Therefore, these grounds are procedurally defaulted.

Petitioner presented the issues of trial court error he pursues in grounds 19 and 25 to the Missouri Court of Appeals as issues of plain error in points one and four of his direct appeal.[57] The Missouri Court of Appeals resolved those issues based on plain error review.[58]  Grounds 19 and 25 are, therefore, procedurally defaulted. See Clark, supra. Due to the Missouri Court of Appeals' explicit recognition of its plain error review, the fact the Missouri Court of Appeals alternatively reviewed those issues on their merits does not preclude this Court from considering those grounds as procedurally defaulted. See, e.g., Harris, 489 U.S. at 264 n. 10.

---

[57] Pet'r' Br., Resp'ts' Ex. C, at 18 and 21.

[58] State v. Ivory, ED96515, Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), Resp'ts' Ex. E, at 5-9.

Finally, Petitioner did not present in his post-conviction appeal the ineffective assistance of standby counsel claim that he pursues in ground 20. Additionally, Petitioner did not present in his direct appeal, but did pursue in his post-conviction appeal, his claim of prosecutorial misconduct challenging the manner in which the prosecutor, during trial, questioned him about other witnesses' testimony and characterized him as a "monster" (ground 27). The Missouri Court of Appeals concluded the prosecutorial misconduct claim was not properly pursued in a post-conviction proceeding and should have been presented in Petitioner's direct appeal.[59] Therefore, both of these grounds are procedurally defaulted. See Osborne, 411 F.3d at 919; Sweet, 125 F.3d at 1150; Tisius, 183 S.W.3d at 212. Having found a number of Petitioner's grounds procedurally defaulted, the Court considers whether it may nevertheless consider their merits based on a showing by Petitioner of either cause and prejudice or a miscarriage of justice.

(2) *Cause and Prejudice or a Miscarriage of Justice to Avoid Procedural Default*

Respondents contend Petitioner has not demonstrated either cause and prejudice or a miscarriage of justice sufficient to avoid any of the procedural defaults. Petitioner counters that his attorneys' failure to present issues in his direct and post-conviction appeals provides cause for his defaults.[60]

A federal habeas court may not reach the merits of a federal constitutional claim procedurally defaulted due to a petitioner's failure to follow applicable state rules in raising the claim in state court, unless a petitioner demonstrates either cause and prejudice or a miscarriage of justice. Sawyer v. Whitley, 505 U.S. 333, 338-39 (1992); accord Skillicorn v. Luebbers, 475 F.3d 965, 976-77 (8th Cir. 2007) ("Unless a habeas petitioner shows cause and prejudice or that

---

[59] Ivory v. State, No. ED99916, slip op., Resp'ts' Ex. I, at 6-7.

[60] See, e.g., Pet'n [ECF No. 1 at 5, 8, 10]; Pet'r reply [ECF No. 44 at 11].

he is actually innocent of the charges, a [federal habeas] court may not reach the merits of procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims"). "Cause for a procedural default exists where 'something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule.'" Maples v. Thomas, 565 U.S. 266, 281 (2012) (alterations and emphasis in original) (quoting Coleman v. Thompson, 501 U.S. 722, 753 (1991)). Notably, "the precise contours of the cause requirement have not been clearly defined." Ivy v. Caspari, 173 F.3d 1136, 1140 (8th Cir. 1999). What is established is that a "fail[ure] to raise [a] claim despite recognizing it, does not constitute cause for a procedural default." Murray v. Carrier, 477 U.S. 478, 486 (1986). If a petitioner does not establish cause for the procedural default, a habeas court need not determine whether he demonstrated prejudice. Oglesby v. Bowersox, 592 F.3d 922, 926 (8th Cir. 2010).

As an alternative to the cause and prejudice exception to procedural default, a petitioner may demonstrate a miscarriage of justice sufficient to avoid the default by presenting new evidence that affirmatively demonstrates he is innocent of the crime for which he was convicted. Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006). Specifically, a petitioner must show both new evidence and "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Osborne, 411 F.3d at 920 (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). "Without any new evidence of innocence, . . . a concededly meritorious constitutional violation is not . . . sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." Cagle v. Norris, 474 F.3d 1090, 1099 (8th Cir. 2007) (quoting Schlup, 513 U.S. at 316).

The only external impediment Petitioner presents as cause for his procedural defaults is his appellate attorneys' failure to pursue the issues in Petitioner's appeals. To establish cause in this context, the attorney's conduct must constitute the ineffective assistance of appellate counsel. Further, if the ineffective assistance of appellate counsel claim is procedurally defaulted, the petitioner must satisfy the cause and prejudice standard for that claim before it may serve as cause for another procedurally defaulted claim. See, e.g., Edwards v. Carpenter, 529 U.S. 446, 450-53 (2000). Here the claims are procedurally defaulted because Petitioner did not pursue them in his post-conviction appeal. See, e.g., Osborne, 411 F.3d at 919; Sweet, 125 F.3d at 1150.

Because Petitioner has not established the requisite cause, the Court need not consider whether Petitioner has demonstrated the prejudice required to overcome the procedural defaults. Oglesby, 592 F.3d at 926. Additionally, Petitioner has not either submitted any new evidence of his actual innocence or alleged such evidence exists. Therefore, neither cause and prejudice nor a miscarriage of justice exists to allow this Court's consideration of the merits of Petitioner's procedurally defaulted claims. Accordingly, the Court denies as procedurally barred, and without addressing their merits, the claims Petitioner sets forth in grounds 1, 3 through 7, 9, 11 through 25, 27-29, and 31.

B.   Merits (Grounds 2, 8, 26, 32, and 33)

(1) Standard for review

The Court is bound by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), see 28 U.S.C. § 2254(d), to exercise "only limited and deferential review of underlying state court decisions." Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003). A federal court may not grant habeas relief to a state prisoner unless a state court's adjudication of a claim

(1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or . . . decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000) ("Taylor"). If a state court's decision is not "contrary to" clearly established law, then the "unreasonableness" standard applies, which is "meant to be difficult to meet, and 'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011)). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Taylor, 529 U.S. at 407-08; see also id. at 413.

The "clearly established Federal law" requirement of habeas review requires the habeas court to consider only United States Supreme Court precedent in force when a state court issues its decision on the merits. Greene v. Fisher, 565 U.S. 34, 38-40 (2011) (relying on Cullen v. Pinholster, 563 U.S. 170 (2011)). State courts are not required to cite to Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Revels v. Sanders, 519 F.3d 734, 739 (8th Cir. 2008)) (quoting Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam)). Importantly, in reviewing state court decisions to ascertain whether they either contradict or unreasonably apply clearly established federal law, a federal habeas court "is

limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 563 U.S. at 181-82.

"Finally, a state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1)." Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004). Under the AEDPA, "a determination of a factual issue made by a [s]tate court shall be presumed to be correct" unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The presumption of correctness applies to a state court's factual determinations at either the trial or appellate level. Smulls v. Roper, 535 F.3d 853, 864-65 (8th Cir. 2008) (en banc). The presumption also applies to a state court's implicit findings of fact. Grass v. Reitz, 749 F.3d 738, 743 (8th Cir. 2014). Likewise, federal habeas courts defer to state court credibility determinations. Smulls, 535 F.3d at 864. Federal habeas courts also defer to "[a] state court's findings of fact made in the course of deciding" an ineffective assistance of counsel claim. Odem v. Hopkins, 382 F.3d 846, 846 (8th Cir. 2004).

(a) *Ground 2: Insufficiency of the Evidence*

For ground 2, Petitioner argues there was insufficient evidence to support the attempted forcible rape conviction in violation of Petitioner's right to due process because (a)  Victim "never stated [Petitioner] straddled her" and (b) Victim testified during cross-examination that (i) Petitioner did not "undo her pants button, her pants never went below her waistline [and] her underwear was never exposed," (ii) "none of her clothes were torn, ripped, or came off," (iii) Petitioner "never touched her . . . vaginal[], breast, or anal area," (iv) Petitioner's "penis was never exposed, [and Petitioner] never pulled his pants down," and (v) Victim did not tell

Petitioner her age. Petitioner contends the jury had to speculate or guess about "[t]he essential element of "straddling" because Victim did not testify that Petitioner straddled her and the prosecutor did not ask her whether Petitioner straddled her.[61]  A conviction may not be based on mere speculation and guesswork, Petitioner argues, citing United States v. Broxmeyer, 616 F.3d 120 (2d Cir. 2010) and United States v. Thai, 29 F.3d 785 (2nd Cir. 1994).[62]

Respondents counter that the Missouri Court of Appeals' decision on direct appeal (concluding there was sufficient evidence to support the attempted forcible rape conviction) is reasonable and supported by the record. Therefore, Respondents argue, this Court should defer to that decision under 28 U.S.C. Section 2254(d). To the extent Petitioner argues that Victim did not testify to Petitioner "straddling" her, Respondents point out she testified that he "backed up off of [her]," citing page 295 of the trial transcript. Both parties cite Jackson v. Virginia, 443 U.S. 307 (1979), in support of their positions on the sufficiency of the evidence.[63]

For sufficient evidence to support a criminal conviction, the Fourteenth Amendment's Due Process clause requires "evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." Id. at 316. The evidence is sufficient to support a "conviction whenever, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

---

[61] Pet'r's reply at 9-10 [ECF No. 44].

[62] Pet'r's reply at 9-10 [ECF No. 44].

[63] Petitioner also cites In re Winship, 397 U.S. 358 (1970), and Sullivan v. Louisiana, 508 U.S. 275 (1993), to support his position that there is insufficient evidence for the attempted forcible rape verdict. Pet'r reply at 7-10 [ECF No. 44]. The In re Winship case, supra, held the proof beyond a reasonable doubt standard applied to juveniles charged with a violation of a criminal law and was discussed by the Supreme Court in Jackson. The Sullivan decision, supra, concluded a constitutionally deficient reasonable doubt instruction required reversal of a conviction. Because Petitioner the Jackson decision included discussion of the In re Winship decision, and a reasonable doubt jury instruction is not at issue here, the Court need not further address these cases.

beyond a reasonable doubt." Parker v. Matthews, 567 U.S. 37, 43 (2012) (per curiam) (emphasis in original). This standard "gives full play to the responsibility of the trier of fact . . . to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

In a habeas proceeding, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted). A federal habeas court "may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court." Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam). Rather, a federal habeas court may only overturn a state court decision on the sufficiency of the evidence "if the state court decision was 'objectively unreasonable.'" Id. (quoting Renico, 559 U.S. at 773); accord Coleman v. Johnson, 566 U.S. 650, 656 (2012) (per curiam) ("Johnson") (A federal habeas court may grant relief if the jury's finding of guilt, based on the evidence considered in the light most favorable to the prosecution, "was so insupportable as to fall below the threshold of bare rationality.").

While the threshold of proof in this analysis "is purely a matter of federal law," a federal habeas court looks to state law for the substantive elements of the offense. Johnson, 566 U.S. at 655. Importantly, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68. With respect to the elements of an attempted forcible rape offense, the Missouri Court of Appeals found in Petitioner's direct appeal that:

> A person commits the crime of forcible rape if such person has sexual intercourse with another person by the use of forcible compulsion. [Mo. Rev. Stat.] Section 566.030.1. "Forcible compulsion" means either physical force that overcomes reasonable resistance or a threat, express or implied, that places a

person in reasonable fear of death, serious physical injury, or kidnapping of such person or another person. Section 556.061(12). A person is guilty of attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense. Section 564.011.1. A "substantial step" is conduct that is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense. Id. "Specific intent to engage in sexual intercourse without consent is an essential element of the crime of attempted rape." State v. Roden, 674 S.W.2d 50, 53 (Mo. [Ct.] App. . . . 1984). Direct evidence of a defendant's intent to rape a victim is rare; consequently, intent generally is established by circumstantial evidence. Roden, 674 S.W.2d at 53. Intent need not be established as a matter of law; rather, it is sufficient that the evidence authorizes such a finding by the jury. Id.

Here, the State was required to prove that [Petitioner]'s purpose was to forcibly rape Victim and that his conduct was strongly corroborative of that purpose.

State v. Ivory, No. ED96414, Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), Resp'ts' Ex. E, at 10. The Court, therefore, considers the record in light of the elements of attempted forcible rape described by the Missouri Court of Appeals in Petitioner's direct appeal.

The scope of habeas review of a state court's determination of whether evidence was sufficient is "extremely limited." Skillicorn v. Luebbers, 475 F.3d 965, 977 (8th Cir. 2007). Importantly, this limited review means that when a federal habeas court is

"faced with a record of historical facts that supports conflicting inferences [the . . . court] must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."

McDaniel v. Brown, 558 U.S. 120, 133 (2010) (per curiam) (quoting Jackson, 443 U.S. at 326) (alteration in original, omission added). A federal habeas court is not permitted to make its own determination of witness credibility, for that determination is for the state court trier of fact. Robinson v. LaFleur, 225 F.3d 950, 954 (8th Cir. 2000). Additionally, the testimony of a victim or an eyewitness is sufficient to sustain a conviction. See Tibbs v. Florida, 457 U.S. 31, 45 n. 21

(1982) (noting that, "[i]f the jury believed [the eyewitness' testimony], the State's presentation was more than sufficient to satisfy due process"); <u>Loeblein v. Dormire</u>, 229 F.3d 724, 726 (8th Cir. 2000) ("A victim's testimony is, by itself, normally sufficient to sustain a conviction").

In its consideration of Petitioner's sufficiency of the evidence claim, the Missouri Court of Appeals gave "great deference" to the trier of fact and reviewed the evidence in a light most favorable to the verdict, disregarding contrary inferences.[64] In its decision, the Court of Appeals found:

> In September 2009, [Petitioner] approached . . . Victim while she waited at a bus stop at Kingshighway and Natural Bridge. Victim, who was 15 years old, was going to her grandmother's house. [Petitioner] offered Victim some chicken, which she refused, and [Petitioner] told Victim that she was cute. Both Victim and [Petitioner] boarded the bus, which was going to the Central West End. [Petitioner] sat next to Victim and asked to use her phone. Victim allowed [Petitioner] to use her phone, and [Petitioner] told Victim his name. Victim told [Petitioner] her nickname but gave [Petitioner] no other information about herself.

> Victim had expected her cousin to pick her up from the bus stop at the Central West End, but her cousin failed to meet her as planned. Because Victim's phone had died, she was unable to contact anyone to come get her, so she decided to take the Metro Link to the Delmar Loop area to her cousin's home. Victim saw that [Petitioner] got on the same Metro Link and off at the Delmar Loop.

> After Victim discovered that her cousin was not at home, Victim went to a Subway restaurant on the Delmar Loop. While Victim was eating a sandwich, [Petitioner] walked past, smiling and looking at Victim. Later, as Victim walked to the bus stop, she saw [Petitioner] sitting at an outside table at Cicero's restaurant. [Petitioner] asked Victim if they could talk, so Victim sat down. [Petitioner] had ordered two beers and a Smirnoff and offered some to Victim. Victim declined. Victim then ordered some food to go and began to leave. [Petitioner] became upset and yelled Victim's nickname as she walked down the street. When Victim looked back, [Petitioner] was gone.

> Victim walked to the Metro Link stop and learned that she had just missed the last bus. Victim walked around a corner and saw [Petitioner] sitting at the bus stop, waiting. Victim started to walk to her grandmother's home, and [Petitioner]

---

[64] <u>State v. Ivory</u>, Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), Resp'ts' Ex. E at 10.

began to follow her. When Victim reached the corner, she saw a man and tried to walk faster to catch up to him. Suddenly, [Petitioner] grabbed her, put his hands around her neck and over her mouth, and told her not to scream or he would kill her. Victim struggled, but [Petitioner] was suffocating her, so she could not breathe. Victim pretended to pass out, but [Petitioner] tried to pick her up. Victim began to scream, and [Petitioner] told her to be quiet and forced her to walk along a pathway to an apartment complex. No one was around and it was dark. When Victim was able to convince [Petitioner] that she would not scream and would do as he commanded, he released her.

Victim ran around a corner into what she thought was a "dead end." Victim turned around; [Petitioner] was "right there," pushed her to the ground, smacked her face, and started to pull off her pants. [Petitioner] then told Victim to pull down her pants and backed up. Victim started to scream again and kicked [Petitioner]. A woman who lived in the apartment complex and her daughter heard Victim's screams. At that moment, the woman yelled from her apartment window, asking whether Victim needed help or wanted the woman to call the police. Victim replied, "Yes." [Petitioner] tried to pull Victim toward a dark alley and continued to push and grab Victim. As a person exited the apartment building, [Petitioner] grabbed Victim's purse and ran. Some of Victim's property, including the contents of her purse and a necklace, fell to the ground.

[Petitioner] testified on his own behalf. [Petitioner] testified that he met Victim at the bus stop at Kingshighway and Natural Bridge. [Petitioner] testified that he and Victim were at Cicero's restaurant together and that he bought two beers for himself and a Smirnoff for Victim. [Petitioner] testified that he placed $20 and his identification on the table and offered to buy Victim some food. Initially, Victim did not want anything. Later, however, Victim changed her mind and ordered some food. [Petitioner] testified that Victim decided to leave when her food arrived, and he noticed that the $20 he had placed on the table to pay for Victim's food was gone. [Petitioner] testified that Victim got a "to-go" bag and started to leave with her food when the waitress came for the money. [Petitioner] testified that he and Victim had a "big confrontation" with the waitress, and [Petitioner] gave the waitress all of the money he had, which was about $5. [Petitioner] testified that he and Victim then walked near some apartments and argued about the missing $20. [Petitioner] testified that Victim put her hands on him, but he pushed her away. [Petitioner] testified that a black lady told them to "knock it off" or she would call the police, but he told the black lady that Victim was his girlfriend. [Petitioner] testified that Victim shouted that she was not his girlfriend and began to scream that [Petitioner] was trying to rape her. [Petitioner] further testified that Victim dumped the contents of her purse on the ground and rushed at him with a sharp metal object and that he pushed Victim off, then ran when he heard sirens.

\*   \*   \*

34

[T]he evidence in this case established that [Petitioner] made a "substantial step" toward forcibly raping Victim. Victim testified that, after an initial physical struggle in which [Petitioner] threatened to kill Victim, [Petitioner] chased her into a dark "dead end" in an apartment complex. [Petitioner] pushed Victim to the ground, smacked her face, and started to pull off her pants. Victim testified that Defendant then ordered her to pull her pants down and backed up a bit to wait for Victim to pull them down. Instead, Victim started screaming that [Petitioner] was trying to rape her. Two witnesses heard Victim's screams and asked if Victim needed help. Victim told the witnesses to call the police, then the witnesses came outside. One of the witnesses saw [Petitioner] push Victim, causing Victim to fall. When [Petitioner] heard sirens, he ran. From this evidence, the jury reasonably inferred that [Petitioner] was attempting to have sexual intercourse with Victim through the use of force and without Victim's consent. [Petitioner] . . . resorted to physical force and threats to kill Victim. . . . The evidence established that [Petitioner] threatened, pursued, attempted to suffocate, smacked, and pushed Victim to force her to submit to [Petitioner]'s attack in addition to trying to remove her pants. [Petitioner]'s actions were sufficiently indicative of his intent to forcibly have sexual intercourse with Victim. . . . The jury also could have reasonably inferred that [Petitioner]'s flight from the scene when he heard sirens was evidence of his consciousness of guilt.

State v. Ivory, Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), Resp'ts' Ex. E at 2-6, 12 (citations omitted).

In this passage, the Missouri Court of Appeals applies the standard of review the United States Supreme Court articulated in the Jackson decision. The record supports the factual findings cited by the Missouri Court of Appeals.[65] Petitioner's challenge to the decision, based on the alleged failure of Victim to testify to states of undress and Petitioner's "straddling" of Victim, does not in itself establish there was insufficient evidence. Nothing of record in light of this Court's standard of review and the evidence at trial presents a concern that the jury had to engage in any speculation or guesswork to reach its finding that Petitioner was guilty beyond a reasonable doubt of attempted forcible rape. The jury had before it the testimony of Victim and Petitioner and the other witnesses, and determined the witnesses' credibility, the weight of the

---

[65] See, e.g., Victim's testimony, Trial Tr., Resp'ts' Ex. at 283-99, 302-03, 314, 316, 324, 346-47, 350-51, 354; Shamona Burch's testimony, id. at 356-58, 364, 373; and Petitioner's testimony, id. at 444-511.

evidence, and the reasonable inferences derived from the evidence. This Court defers to, and does not re-examine, those aspects of the jury's decision.

The Missouri Court of Appeals' decision that there was sufficient evidence to support the attempted forcible rape conviction is not an incorrect or objectively unreasonable application of clearly established federal law, and constitutes a reasonable determination of the facts based on the evidence presented. Ground 2 is without merit.

(b) *Ground 8: Trial Court's Jurisdiction over the Kidnapping Offense*

In ground 8, Petitioner asserts the trial court lacked jurisdiction and violated Petitioner's rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments because there was no probable cause to support the kidnapping charge. Petitioner states the kidnapping charge was based on confinement without consent for the purpose of terrorizing. The probable cause statement, however,[66] did not mention either confinement without consent or terrorizing, according to Petitioner. Petitioner alleges that the probable cause statement also failed to mention how Petitioner "allegedly terrorized" Victim. Respondents cite Poe v. Caspari, 39 F.3d 204 (8th Cir. 1994), to argue that a claim that a state court lacks jurisdiction over a state charge is not cognizable in a federal habeas proceeding. Respondents further argue that the challenge to the probable cause statement is moot after the jury found Petitioner guilty beyond a reasonable doubt of the charged kidnapping offense.

The State originally charged Petitioner by a complaint supported by a "probable cause statement."[67] In relevant part, the complaint charged that, in violation of "Section 565.110, RSMo," Petitioner "committed the class B felony of kidnapping . . . in that on or about

---

[66] Probable Cause Statem., Legal File, Resp'ts Ex. B, at 19.

[67] Complaint, Legal File, Resp'ts' Ex. B, at 17-19.

September 9, 2009, [Petitioner] unlawfully confined [Victim] without her consent for a substantial period, for the purpose of terrorizing [Victim]."[68]   For the kidnapping offense, the probable cause statement asserts that Petitioner "removed [Victim] from [one] block . . . and took her by the throat to the rear of" a specific building on the same street.[69]

Later, a grand jury returned an indictment charging Petitioner, in relevant part, with the same kidnapping offense charged in the complaint. The complaint charged Petitioner with "violating Section 565.110, RSMo., . . . the class B felony of kidnapping . . . ." In support, it stated "that on or about September 9, 2009, [Petitioner] unlawfully confined [Victim] without her consent for a substantial period, for the purpose of terrorizing [Victim]."[70]   The State subsequently charged Petitioner by a substitute information in lieu of indictment, which included a kidnapping charge identical to the one in the indictment.[71]   In addition to the offenses charged in the indictment, the substitute information in lieu of indictment included allegations that Petitioner was a prior offender under Mo. Rev. Stat. Section 558.016.[72]

In his motion to set aside or arrest judgment, Petitioner argued his conviction should be set aside "on the ground that the court is without jurisdiction of the offense charged."[73]   He further stated that

> In violation of Double Jeopardy [he] was charged with and convicted of [count] 2 kidnapping.  However, the kidnapping occur[r]ed at the same time and place as

---

[68]   Complaint, Legal File, Resp'ts' Ex. B, at 17.

[69]   Probable Cause Statem., Legal File, Resp'ts' Ex. B, at 19.

[70]   Indictment, Legal File, Resp'ts' Ex. B, at 20-21.

[71]   Substitute Information in lieu of indictment, Legal File, Resp'ts' Ex. B, at 33-34.

[72]   Substitute Information in lieu of indictment, Legal File, Resp'ts' Ex. B, at 34.

[73]   Pet'r mot. set aside or arrest J., Legal File, Resp'ts' Ex. B, at 128.

the [a]ttempt[ed] [f]orcible [r]ape.  Also the kidnapping charge was only p[re]mised on unlawful confinement for the purpose of terrorizing.  Therefore the court is without jurisdiction of an offense in violation of Double Jeopardy.

Petitioner brought the motion up during the sentencing hearing but the trial court did not resolve the motion.[74]

In his pro se post-conviction motion, Petitioner stated as claim "z25" that "the [trial] court was without jurisdiction to impose the sentence for count 2 kidnapping because the charge was not supported by probable cause."[75] The motion court found Petitioner's claim "z25" regarding "the lack of probable cause to support the kidnapping charge [is] conclusory and legally without merit." [76]      Because the "z25" claim presented by Petitioner did not refer to a federal constitutional right, and the motion court's denial of this claim did not refer to a federal constitutional right, the Court finds the motion court resolved Petitioner's probable cause challenge to the kidnapping charge as a matter of state law.

A "[d]etermination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary." Martin v. Solem, 801 F.2d 324, 331 (8th Cir. 1986). A federal habeas court cannot decide whether a state court has jurisdiction "when the question of jurisdiction is one of valid state law only."  Poe, 39 F.3d at 207. To the extent Petitioner challenges the trial court's jurisdiction over the kidnapping charge in the complaint based on an alleged conflict between the circumstances in the charge and in the probable cause statement, the claim is not cognizable in this proceeding because it arises out of state law.

---

[74]  Sentencing Tr. at 26-27 [ECF No. 1-2 at 73].

[75]  Pet'r pro se PCR post-conviction, PCR Legal File, Resp'ts' Ex. F at 28.

[76]  PCR J., PCR Legal File, Resp'ts' Ex. F, at 133.

To the extent Petitioner challenges the probable cause statement itself as insufficient to support probable cause for the kidnapping offense charged, the claim is moot. The Supreme Court has addressed the significance of an indictment and a petit jury verdict on a probable cause determination. "[A]n indictment, 'fair upon its face,' and returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause." Gerstein v. Pugh, 420 U.S. 103, 117 n. 19 (1975) (quoting Ex parte United States, 287 U.S. 241, 250 (1932)). Additionally, a jury's guilty verdict on charged offenses "demonstrates *a fortiori* that there was probable cause to charge the defendants with the offenses for which they were convicted." United States v. Mechanik, 475 U.S. 66, 67, 70 (1986) (finding a violation of Federal Rule of Criminal Procedure 6(d)—which "protects against the danger that a defendant will be required to defend against a charge for which there is no probable cause to believe him guilty"—was harmless error not requiring reversal of the conviction). The Supreme Court explained that "the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt." Id. at 70. Here, the challenged probable cause statement supporting the kidnapping offense in the initial complaint preceded the grand jury's return of an indictment charging Petitioner with the same kidnapping offense and then a petit jury's verdict finding Petitioner guilty beyond a reasonable doubt of the same charged kidnapping offense.

The Court need not further address the merits of ground 8 because it is either (1) not cognizable in this habeas proceeding to the extent it challenges the state trial court's jurisdiction based on state law or (2) moot due to the subsequent indictment and verdict regarding the same offense.

*(c)  Ground 26: Ineffective Assistance of Counsel on Direct Appeal*

In ground 26, Petitioner argues the motion court violated his constitutional rights by denying his post-conviction motion without a hearing. Further, he argues that his counsel on direct appeal was ineffective for failing to raise a claim that the trial court erred in overruling his objections "based [on] speculation and being argumentative." The prosecutor's questions allegedly "forc[ed Petitioner] to speculate about why all of the witnesses put this case on [him] and [when the prosecutor] call[ed Petitioner] a monster." Petitioner argues that the motion court thereby violated his right to the effective assistance of counsel, due process, and access to the courts in violation of the Fifth, Sixth, and Fourteenth Amendments. In ground 26, Petitioner argues the motion court violated his constitutional rights by denying his post-conviction motion without a hearing. He argues that his counsel on direct appeal was ineffective for failing to raise a claim "the trial court erred in failing to sustain [his] objections" when the prosecutor's questions "forc[ed him] to speculate about why all of the witnesses put this case on [him]." Respondents counter that this Court should defer to the Missouri Court of Appeals' decision on this issue in Petitioner's post-conviction appeal because the decision is reasonable and supported by the record.

"[T]he right to counsel [under the United States Constitution] is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n. 14 (1970); accord Kimmelman v. Morrison, 477 U.S. 365, 377 (1986). The right to the effective assistance of counsel applies to representation during a direct appeal. Evitts v. Lucey, 496 U.S. 387, 396-97 (1985). The United States Supreme Court's decision in Strickland v. Washington, 466 U.S. 668 (1984), provides the proper standard for evaluating a claim of ineffective assistance of appellate counsel. Smith v. Robbins, 528 U.S. 259, 285 (2000). To establish an ineffective assistance of

counsel claim, <u>Strickland</u> requires a federal habeas petitioner to show that: (1) "counsel's representation fell below an objective standard of reasonableness" ("performance prong") and (2) "the deficient performance prejudiced the defense" ("prejudice prong"). <u>Strickland</u>, 466 U.S. at 687, 688. When considering a claim that appellate counsel provided ineffective assistance, a court need not address both <u>Strickland</u> requirements if it finds one of the requirements is not satisfied. <u>Smith</u>, 528 U.S. at 286 n. 14.

With regard to the performance prong, an appellate attorney has a responsibility "to winnow the available arguments and exercise judgment about which are most likely to succeed on appeal." <u>Gray v. Norman</u>, 739 F.3d 1113, 1118 (8th Cir. 2014); <u>see</u> <u>Jones v. Barnes</u>, 463 U.S. 745, 751-52 (1983) (an attorney on direct appeal does not have a duty to pursue on appeal every colorable issue). Moreover, an appellate attorney, does not provide ineffective assistance by failing to argue an issue that lacks merit. <u>Grubbs v. Delo</u>, 948 F.2d 1459, 1466-67 (8th Cir. 1991); <u>Thompson v. Jones</u>, 870 F.2d 432, 434-35 (8th Cir. 1988). For the prejudice element, a petitioner "must show a reasonable probability that, but for his counsel's unreasonable failure [to raise an issue on appeal], he would have prevailed on his appeal." <u>Smith</u>, 528 U.S. at 285-86.

Importantly, the question "under § 2254(d) is not whether [the federal habeas court] believe[s] the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." <u>Kennedy v. Kemna</u>, 666 F.3d 472, 477 (8th Cir. 2012) (internal quotation marks omitted) (quoting <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009)). "Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is . . . difficult." <u>Harrington</u>, 562 U.S. at 105. "The standards created by <u>Strickland</u> and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." <u>Id.</u> (internal citations omitted).

In its decision affirming the denial of Petitioner's post-conviction motion without a hearing, the Missouri Court of Appeals described the prosecutor's relevant questioning at trial as follows:

> At trial, [Petitioner] testified on his own behalf. On cross-examination, the prosecutor asked [Petitioner] why all of the State's witnesses, none of whom knew [him], would get together "to put a case against" him. [Petitioner]'s objection to speculation was overruled, and [Petitioner] answered that people were "making this up" and that "everything ain't always what it appear." The prosecutor then responded, "You probably weren't what you appeared when you first talked to [Victim]. She probably thought you were a nice guy, didn't she?" [Petitioner]'s objection to the question being argumentative was overruled, and the prosecutor followed up by saying, "You probably did not appear to be the 'monster' you turned into when you first said hi to [Victim], did you?" Without any objection, [Petitioner] answered, "That's not true."

Ivory v. State, No. ED99916, Resp'ts' Ex. I, at 1-2 (sixth and eighth alterations in original). Additionally, the Missouri Court of Appeals concluded there was support in the record for the motion court's findings and conclusions that the prosecutor's questioning lacked merit based on the motion court's reasoning that

> [Petitioner] was not a credible witness at his trial, and he invited the questioning of which he complains. [...]
>
> It is apparent to the [motion] Court that the statements by the prosecutor of which [Petitioner] complains were in response to [Petitioner]'s own testimony; that his objection that they were argumentative was unfounded; that the prosecutor's question in which she used the term "monster" was not inappropriate within the context in which she used it; and, there is no reasonable probability that had this issue been raised on appeal it would have resulted in the reversal of [Petitioner]'s convictions.

Id. at 4 (second alteration in original). The Missouri Court of Appeals found Petitioner "invited the questioning he alleges his appellate counsel failed to bring up on direct appeal" and "the trial court did not err in overruling [Petitioner's] objections." Id. at 4 and 5.

The Missouri Court of Appeals cited <u>Strickland</u> and other relevant authority regarding an ineffective assistance of counsel claim, and concluded: "[a]ppellate counsel is under no obligation to raise every issue asserted in the motion for new trial, and can make the strategic decision to remove frivolous claims not likely to result in reversal in favor of putting forth stronger arguments." <u>Id.</u> at 5. The Missouri Court of Appeals concluded the motion court did not err in denying this ineffective assistance of counsel claim because Petitioner "failed to establish that had appellate counsel raised his objections as issues on direct appeal, it would likely have resulted in reversal of his conviction." <u>Id.</u>

Petitioner's ineffective assistance of counsel claim arises out of his position that his objections were meritorious.[77] The Missouri Court of Appeals' concluded, however, that no reversal would have occurred if Petitioner had presented this claim about the prosecutor's questioning in his direct appeal. <u>Id.</u> An appellate attorney who fails to raise "an issue that lacks merit" does not provide ineffective assistance. <u>Grubbs</u>, 948 F.2d at 1466-67; <u>Thompson</u>, 870 F.2d at 434-35.

Under this Court's highly deferential standard of review, Petitioner's ineffective assistance of counsel claim lacks merit. The Missouri Court of Appeals' decision affirming the motion court's denial of this claim is a correct and reasonable application of clearly established federal law and a reasonable determination of the facts based on the record. Ground 26 is denied.

(d) *Ground 32: Sentencing for an "Unclassified" Felony*

In ground 32, Petitioner contends the trial court violated his rights under the Fifth, Sixth, and Fourteenth Amendments by sentencing him for attempted forcible rape as an unclassified

---

[77] Pet'n [ECF No. 1 at 42].

felony when the offense "was only charged as a felony." Respondents did not respond to this ground with respect to either its merits or any procedural issue affecting it.

The substitute information in lieu of indictment does not contain the word "unclassified" before the word "felony" in the description of the attempted forcible rape offense.[78] The trial court's judgment has "unclassified" as the description of the felony for the attempted forcible rape offense.[79] Petitioner presented his challenge to this alleged variance as a due process violation in paragraph "r" of his pro se post-conviction motion.[80] The motion court denied the claim on state law grounds, concluding that Petitioner "misstated the law, see [Missouri Revised Statutes] § 566.030.2, and [Petitioner's] sentence is within the statutory range."[81]

The Court addresses this ground on its merits.[82] As noted before, in a habeas proceeding, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." Renico, 559 U.S. 766, 773 (internal quotation marks and citations omitted). Because the motion court resolved Petitioner's claim as a matter of state law, the Court does not revisit the decision to the extent it addresses state law issues. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle, 502 U.S. at 67-68.

Petitioner does not cite any Supreme Court holding that a difference between a state court's classification of a felony charge and the prosecutor's specific classification of the charge

---

[78] Substitute information in lieu of indictment, Legal File, Resp'ts' Ex. B, at 33-34.

[79] Trial Court J., Legal File, Resp'ts' Ex. B, at 135-38.

[80] Pet'r pro se PCF mot. at 10, PCR Legal File, Resp'ts' Ex. F at 18.

[81] Mot. Ct. J. para. 19, PCR Legal File, Resp'ts' Ex. F at 131.

[82] Because Petitioner has not had an opportunity to present his position on any procedural default of this ground and ground 33, the Court does not sua sponte consider procedural default issues with respect to those two grounds. See Dansby v. Hobbs, 766 F.3d 809, 824 (8th Cir. 2014).

violates the federal constitution. Therefore, the state court's denial of the post-conviction challenge was not contrary to, nor involved an unreasonable application of, clearly established federal law. See Guinn v. Kemna, 489 F.3d 351, 358 (8th Cir. 2007). Ground 32 is denied.

    (e) *Ground 33: Prosecutor's Alleged Violation of Agreement Concerning Introduction of Prior Bad Act Evidence During Trial*

In ground 33, Petitioner contends the prosecutor violated Petitioner's rights under the Fifth and Fourteenth Amendments by not following an agreement "to preclude the State's admission of prior arrest[s], trials, and investigations of the witness[es], both during voir dire and at trial." Petitioner explicitly refers to page 49 lines 16-21 and page 286 lines 10-17 of the trial transcript as support for this ground.[83] Respondents did not respond to this ground with respect to either its merits or any procedural issue affecting it.

Prior to the start of voir dire, Petitioner moved "in limine to preclude the admissions or State's introduction of prior arrests or trials or investigations of the witness[es]."[84] The prosecutor advised the trial court and Petitioner that she did not intend to "bring up any prior bad act issues . . . . [which the trial court described as] prior arrests, . . . prior charges, . . . prior trials . . . unless the door's opened."[85] The trial court asked the prosecutor to "approach the bench" before she brought up prior bad act evidence and the prosecutor agreed to do so.[86]

During voir dire, the prosecutor asked a venireperson who was a police officer: "[T]his is a criminal case, there are criminal charges pending against [Petitioner]. Do you know anything

---

[83] Pet'n [ECF No. 1 at 53].

[84] Trial Tr., Resp'ts' Ex. A, at 23.

[85] Trial Tr., Resp'ts' Ex. A, at 23.

[86] Trial Tr., Resp'ts' Ex. A, at 23-24.

about them?"  Trial Tr., Resp'ts' Ex. A, at 49, lines 17-21. Then, while questioning Victim, the prosecutor asked if Petitioner told Victim "anything . . . about himself while on the bus."[87]  In response to the prosecutor's follow up question, "what other types of things . . . was [Petitioner] saying, if at all, on the bus," Victim responded:  "He just – he was just talking about he had just got out of jail and stuff."[88]  Trial Tr., Resp'ts' Ex. A, at 286 lines 10-11. Petitioner objected on the ground it was "irrelevant, inadmissible [and . . . ] was approached upon [through his] motion in limine . . . ."[89]  Id. at lines 13-15. The Court sustained Petitioner's objection and instructed the jury "to disregard the answer."[90]  Id. at lines 16-17.

In his motion for a new trial, Petitioner raised the prosecutor's alleged violation of the agreement without presenting the constitutional basis for this claim.[91]  The trial court summarily denied and overruled Petitioner's motion for new trial during the sentencing hearing.[92]  Petitioner also pursued the claim as a violation of his right to due process in his pro se post-conviction motion.[93]  The motion court denied the claim as "not cognizable in th[e PCR] proceeding as [it is a] claim[] of . . . prosecutorial misconduct."[94]

The Court addresses this ground on its merits, despite the absence of a state court decision on the merits concerning this particular argument. Due to that absence, the Court applies

---

[87]  Trial Tr., Resp'ts' Ex. A, at 286.

[88]  Trial Tr., Resp'ts' Ex. A, at 286.

[89]  Trial Tr., Resp'ts' Ex. A, at 286.

[90]  Trial Tr., Resp'ts' Ex. A, at 286.

[91]  Pet'r mot. new trial para. 10, Legal File, Resp'ts' Ex. B at 121.

[92]  Sentencing Tr., at 27 [ECF No. 1-2 at 73].

[93]  Pet'r pro se PCR mot. para "z6", PCR Legal File, Resp'ts' Ex. F at 22.

[94]  Mot. Ct. J. para. 24, Legal File, Resp'ts' Ex. F, at 132.

the pre-AEDPA standard of review in considering the merits of this ground for relief. See Clemons v. Luebbers, 381 F.3d 744, 755 (8th Cir. 2004).

Prior to the AEDPA, a petitioner seeking habeas relief based on claims of prosecutorial misconduct that did not affect a specific constitutional right had to establish that "the misconduct infected the trial with enough unfairness to render [the] conviction a denial of due process." Stringer v. Hedgepeth, 280 F.3d 826, 829 (8th Cir. 2002) (internal quotation marks and citation omitted). To support habeas relief the prosecutor's challenged remarks had to be "so egregious that they fatally infected the proceedings and rendered [the] trial fundamentally unfair." Id. (internal quotation marks and citation omitted). A successful pre-AEDPA petitioner needed to demonstrate that there was "a reasonable probability that the error complained of affected the outcome of the trial – i.e. that absent the alleged impropriety the verdict probably would have been different." Id. (internal quotation marks and citation omitted).

Here, the relevant agreement governed the introduction or mention of prior charges and related bad acts during trial. Specifically, the prosecutor was required to provide prior notice before introducing evidence about prior charges and related matters during trial. Petitioner's claim focuses on only two questions by the prosecutor, one during voir dire and one during Victim's testimony. The prosecutor's challenged voir dire questioning referred to "this case" and stated criminal charges were "pending" against Petitioner. Such a reference pertains to the charges in the criminal case being tried, rather than to prior criminal charges. Therefore, the prosecutor's challenged voir dire questioning did not violate the agreement.

Nor did the prosecutor's challenged questioning of Victim violate the agreement. While Victim responded to the prosecutor's challenged question with a reference to Petitioner's earlier stay in jail, Victim's response was spontaneous and not required by the wording of the

prosecutor's question. Additionally, the trial court sustained Petitioner's prompt objection to the answer and <u>sua</u> <u>sponte</u> instructed the jury to disregard the answer.

Petitioner has not established that the prosecutor's two alleged violations of the agreement regarding the introduction of prior bad act evidence during trial rendered his criminal trial fundamentally unfair and his conviction a denial of due process. <u>See</u> <u>Stringer</u>, <u>supra</u>. The prosecutor's two challenged questions did not create a probability, much less a reasonable probability, that the trial outcome was adversely affected. Nothing about the prosecutor's two challenged questions supports a finding that, absent those questions, the verdict probably would have been different. Ground 33 is denied.

### IV. Requests for Evidentiary Hearing and "Federal Public Defender"

Petitioner requests an evidentiary hearing with respect to ground 4 only. Petitioner states he did not have an evidentiary hearing during his post-conviction motion proceeding. Without further explanation, Petitioner also asks the Court for a "Federal Public Defender" with respect to ground 4.[95] Respondents did not address these requests.

A.  <u>Evidentiary hearing</u>

Generally, an evidentiary hearing is within a habeas court's discretion, as limited by statutory restrictions set forth in the AEDPA. <u>See</u> <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473-75 (2007); 28 U.S.C. § 2254(e)(2). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro</u>, 550 U.S. at 474. In addition, a federal habeas court must take into account "the deferential

---

[95]  Pet'n [ECF No. 1 at 19]. In support of his evidentiary hearing request, Petitioner cites <u>Church v. Sullivan</u>, 942 F.2d 1501 (10th Cir. 1991). Pet'n [ECF No. 1 at 50]. The Court need not discuss that decision because it was issued before enactment of the AEDPA in 1996 and it is not a decision of the Eighth Circuit, which has issued decisions on requests for evidentiary hearings in habeas cases.

standards" under the AEDPA that "control whether to grant habeas relief." Id. A habeas court need not hold an evidentiary hearing "if the record refutes the . . . factual allegations, [if the record] otherwise precludes habeas relief," or "on issues that can be resolved by reference to the state court record." Id. (internal quotation marks and citation omitted); see Cullen, 563 U.S. at 181-82 (holding habeas review under the AEDPA "is limited to the record that was before the state court that adjudicated the claim on the merits").

The ground for which Petitioner requests an evidentiary hearing, ground 4, is procedurally barred. See discussion of procedural bar issues supra. The Court reviewed the available state court record to resolve the procedural bar issues. Petitioner has not provided any basis for an evidentiary hearing under the AEDPA, Schriro, and the circumstances surrounding the disposition of ground 4. Accordingly, the Court denies Petitioner's evidentiary hearing request. See Crawford v. Norris, 363 Fed. Appx. 428 (8th Cir. 2010) (unpublished per curiam opinion) (affirming district court's decision not to hold an evidentiary hearing in a habeas case in which the state post-conviction motion court had not held a hearing).

B. "Federal Public Defender"

Petitioner provides no authority for the appointment of a federal public defender in a federal habeas proceeding. With an exception inapplicable here, see 28 U.S.C. § 2261, there is no constitutional or statutory right to the appointment of counsel in habeas corpus proceedings. See Morris v. Dormire, 217 F.3d 556, 558 (8th Cir. 2000). Rather, the appointment of counsel for a federal habeas petitioner "is committed to the discretion" of a federal habeas court. McCall v. Benson, 114 F.3d 754, 756 (8th Cir. 1997) (citing Pennsylvania v. Finley, 481 U.S. 551, 555-57 (1987)). Where the issues involved in the habeas proceeding may be resolved without an

evidentiary hearing, the court does not abuse its discretion in denying a request for the appointment of counsel. See Hoggard v. Purkett, 29 F.3d 469, 472 (8th Cir. 1994).

Based on the available record and applicable principles, the Court was able to consider and resolve the issues in this habeas proceeding without an evidentiary hearing. Accordingly, Petitioner's request for a "Federal Public Defender" is denied.

## V. Requests for Certificate of Appealability and for Credit on the Kidnapping Sentence

Petitioner moves the Court to issue a certificate of appealability ("COA") with respect to the denial of grounds 1 [ECF No. 47], 2 [ECF Nos. 45 and 49], 22 [ECF No. 48], and 33 [ECF No. 46]. Respondents did not respond to these motions.

A certificate of appealability is required to appeal a final order in a habeas proceeding under 28 U.S.C. § 2254. 28 U.S.C. § 2253(c); Fed. R. App. 22(b)(1). A district judge has authority to issue a certificate of appealability. Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997). A judge may issue a certificate of appealability only if a petitioner has made "a substantial showing of the denial of a constitutional right." Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003). To satisfy this requirement, a petitioner must demonstrate the issues are debatable among reasonable jurists with respect to either resolving the issues differently or requiring further proceedings. Id.

When a federal habeas court resolves issues on their merits, the petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 483-84 (2000). When a federal habeas court resolves a ground for relief on procedural grounds,

> without reaching the [petitioner's] underlying constitutional claim, a COA should
> issue when the [petitioner] shows, at least, that jurists of reason would find it
> debatable whether the petition states a valid claim of the denial of a constitutional

right and that jurists of reason would find it debatable whether the district court
was correct in its procedural ruling.

Slack, 529 U.S. at 484. "[A] reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further " when a district court correctly disposes of the case on the procedural issue. Id.

Having reviewed Petitioner's motions for issuance of COAs, the Court concludes Petitioner has not made a substantial showing of the denial of constitutional rights and has not satisfied the requirements set forth in Slack. Accordingly, Petitioner's motions for COAs are denied. For the same reasons, the Court will not issue a COA with respect to any aspect of the denial of Petitioner's petition. Finally, with respect to Petitioner's request for credit on his kidnapping sentence, the request is denied because it is not available in this federal habeas proceeding. To the extent such relief is available through a federal habeas proceeding, Petitioner's request for credit will still be denied, because the Court did not grant relief on ground 2.

## VI. Conclusion

After careful consideration,

**IT IS HEREBY ORDERED** that Josh Hawley, the present Attorney General of the State of Missouri, is **SUBSTITUTED for** Chris Koster as a Respondent in this case.

**IT IS FURTHER ORDERED** that Petitioner's requests for an evidentiary hearing and a "Federal Public Defender" with respect to ground 4 [see ECF No. 1 at 14] are **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Petition for Writ of Habeas Corpus [ECF No. 1] is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's request for credit on his kidnapping sentence [ECF No. 50] is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's motions for Certificates of Appealability [ECF Nos. 45, 46, 47, 48, and 49] are **DENIED**.

**IT IS FINALLY ORDERED** that the Court will not issue a Certificate of Appealability.

A separate judgment in accordance with this Memorandum and Order is entered this same date.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 30th day of March, 2018.